Billy K. WATKINS, Plaintiff–Appellant,

v.

NORTHWESTERN OHIO TRACTOR PULLERS ASSOCIATION, INC., Defendant–Appellee.

No. 78–3598.

United States Court of Appeals, Sixth Circuit.

Argued June 20, 1980.

Decided Oct. 3, 1980.

Dennis Gross, Hill, Gross, Simpson, Van Santen, Stedman, Chiara & Simpson, Chicago, Ill., for plaintiff–appellant.

Donald R. Fraser, Wilson, Fraser, Raptes & Clemens, Wilbur A. Schaich, Toledo, Ohio, for defendant–appellee.

Before LIVELY, BROWN and KENNEDY, Circuit Judges.

CORNELIA J. KENNEDY, Circuit Judge.

Plaintiff Billy K. Watkins appeals the dismissal by summary judgment of his action for patent infringement. Watkins, a small Livingston, Illinois farmer, is the inventor and patentee of a tractor sled, a device used in contests at county fairs and other exhibitions to determine which trac-·

tor can pull the most weight. Northwestern Ohio Tractor Pullers Association is a non–profit corporation organized for the purpose of sponsoring tractor pulls. It built two tractor pulling sleds, Heartbreaker I and Heartbreaker II, which Watkins alleges infringe his patent. The District Court found that there were no material issues of fact and that plaintiff's claim was barred by laches and estoppel.

## I. Findings of the District Court and Disputed Issues of Fact

There are a number of facts which are not in dispute. In August 1967, plaintiff demonstrated his tractor sled in Bowling Green, Ohio. Merle Grimm, one of defendant's founders, saw the demonstration. At that time, Grimm was a member of an unincorporated club which was defendant's predecessor. In the fall of 1967, Grimm built a sled (Heartbreaker I) for the club. December 30, 1969, plaintiff wrote to the club, in care of Grimm, that a patent would be issued to him shortly on his sled and that plaintiff learned defendant intended to use the Grimm sled at the forthcoming National Farm Machinery Show at Louisville, Kentucky, February 11 and 12, 1970. The letter stated the use of the Grimm sled without a license would be an infringement and threatened suit. Plaintiff also wrote the National Farm Machinery Show, warning of the possible infringement.

Plaintiff's patent was issued January 27, 1970 (Patent # 3,491,590). The sled was not used at the February 1970 show and plaintiff was so advised by his attorney. Grimm did not respond to the December 30, 1969 letter. Grimm wrote other sled owners in February 1970 to ask their help in challenging plaintiff's patent, but no concrete action was taken. June 23, 1970, the club incorporated as Northwestern Ohio Tractor Pullers Association, Inc., and Grimm became the first president. The Grimm sled was transferred to the corporation. September 1972, plaintiff wrote to defendant in care of the person he believed to be president, a Mr. Chamberlain, but the letter was returned. In 1974, defendant sold its first sled and built another sled (the Heartbreaker II). Contracts for the use of both sleds were filed with defendant's answer. The earliest date legible was August 11, 1970. January 21, 1976, plaintiff sued another alleged infringer named Lloyd Luedtke. Plaintiff, on advice of his counsel, wrote a letter to Grimm and others who might be infringing, advising that he was presently suing on his patent and intended to enforce his rights against other infringers upon completion of the Luedtke suit. This letter to Grimm was undated but was given by Grimm to defendant's attorneys May 27, 1976. Grimm did not answer this letter. Plaintiff's attorney wrote Grimm again June 15, 1977 inquiring as to the relationship between Grimm and defendant, offering to license, and threatening immediate suit for patent infringement if no response was received. Grimm's attorneys did respond at this point to say the matter had been referred to them. A substantive response was written by Grimm's attorneys, claiming laches and estoppel, October 11, 1977. Suit was filed against defendant December 2, 1977.

Defendant has no post office box, no office, no phone. It does have officers and a statutory agent, but no mailing address other than through the statutory agent or the officers.

The District Court found that there were no disputed facts and defendant was entitled to summary judgment. Based on the depositions, exhibits, and answers to interrogatories, it found the following facts were undisputed. Plaintiff built his sled June 1967 and demonstrated it in Bowling Green, Ohio August 1967, where it was examined by Grimm. Grimm constructed his sled, tested it March 1968, and used it July 4, 1968. Plaintiff filed for his patent April 24, 1968. By December 30, 1969, certain of plaintiff's claims had been deemed allowable by the patent examiner. The Court held the December 30, 1969 letter could only be characterized as a Notice of Infringement and Offer to License. The Court found that Grimm, without knowing the merits of plaintiff's claim, desisted from using his sled at the February 1970 show.

Since that time, the sled has been used openly at county fairs and in 1974, a larger sled was built and the original was sold. The Court found the next contact with defendant from plaintiff was the May 27, 1976 letter which the Court characterized as a Notice of Prior Suit for Infringement, an Intent to Sue, or an Offer to License. It concluded that since more than six years had passed between the December 30, 1969 Notice of Infringement and the filing of the suit defendant was presumed to have been injured by the delay. It held defendant was injured in fact by acceding to plaintiff's request not to use the sled February 1970 and by building a larger sled. It held there was sufficient similarity in identity between the unincorporated club and defendant and between the first sled and the second that the notice in 1969 to the club of infringement by use of the first sled was notice to defendant of infringement by the second sled. The other litigation was held not to have tolled the six–year period. The District Court concluded plaintiff was barred by laches from pursuing his noticed alleged infringement claim against an entity which was easily ascertainable by mail or diligent pursuit and which carried on its allegedly infringing activities openly and publicly for more than six years. Without any further findings, the Court held plaintiff was estopped and granted defendant's motion for summary judgment.

Plaintiff argues several material issues of fact are in dispute and should not have been decided by the District Court on a motion for summary judgment. Specifically, plaintiff argues that no evidence supports the Court's findings of similarity between the unincorporated club and defendant and between Heartbreaker I and Heartbreaker II. It argues that whether or not defendant is easily ascertainable and whether or not defendant was injured by the delay are also disputed facts.

He also urges that he is not guilty of laches as the applicable period did not start running until the first threatened use after issuance of the patents. The delay in suing was not unreasonable, he argues, as he could not locate defendant earlier. More-

over, defendant was not harmed by the delay. He further argues the applicable period is tolled because he was involved in other litigation concerning the same patent. He claims he is not estopped as defendant did not rely to its detriment on any action or representation of plaintiff.

██ The District Court may grant a motion for summary judgment only if it finds from the whole record before it that there are no material facts which are in dispute. *See* Rule 56(c), Fed.R.Civ.Pro. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently. *See Smith v. Hudson*, 600 F.2d 60, 63–64 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Upon a review of the entire record in this case, this Court must agree with the plaintiff that the District Court made findings with respect to facts which were in dispute. Grimm testified that Heartbreaker II was similar in some respects to Heartbreaker I, but he also said it was bigger, carries more weight, has more gears, and carries the sled as a self–contained unit which Heartbreaker I did not do.

Grimm said defendant was easily located through its officers, and defendant's name, although not its address or officers' names, was on the side of the tractor sled. He said Heartbreaker I was used in about 10–15 pulls the first couple of years and 15–25 the next. The sponsoring organizations of the pulls were aware of defendant and knew how to contact it. Plaintiff, by affidavit, stated that after February 1970 he was not sure about defendant's existence or the continued use of the Grimm sled. He heard about the sled being used in 1971 and wrote to defendant in care of Dan Chamberlain

but this letter was returned. (Grimm said David Chamberlain has been president since 1973.) Plaintiff's attorney stated by affidavit that he attempted to find defendant through the Ohio Secretary of State's Office and Dun & Bradstreet in 1976. Plaintiff's attorney's efforts to find defendant came after the May 27, 1976 letter noticing the other litigation and an intent to sue. Thus, these efforts cannot prove defendant was difficult to locate prior to this notice. However, that plaintiff's counsel had difficulty finding defendant after tends to support plaintiff's assertion that defendant was difficult to locate before and at least creates a disputed issue of fact.

 Plaintiff stated that he believed Heartbreaker I was not used at the February 1970 show, but no evidence indicates why defendant did not use its sled. Defendant built a bigger sled in 1974, but Grimm testified at his deposition that after the February contacts, neither he nor the organization took any further action with respect to plaintiff's patent. Indeed, the existence or non–existence of plaintiff's patent had no influence on their subsequent activities, according to Grimm. The District Court should not have in ruling on the motion for summary judgment made findings of fact about the similarity of Heartbreaker I and Heartbreaker II, whether or not defendant is easily ascertainable with diligent search, and whether or not defendant was injured in reliance upon plaintiff's actions or delay as these findings were either unsupported by the record or were disputed. The grant of summary judgment is in error, however, only if these disputed issues are material.

## II. Laches and Plaintiff's Claim for Injunctive Relief

 Plaintiff sued for damages for past infringement and injunctive relief against future infringement. This Court recently summarized the law regarding delay in filing infringement actions in *TWM Manufacturing Co., Inc. v. Dura Corp.*, 592 F.2d 346 (6th Cir. 1979). A patentee has the right to sue for infringement of his patent for seventeen years. *See* 35 U.S.C. §§ 281, 154. But the patentee may only recover for infringements which occurred within six years of filing the action. *See* 35 U.S.C. § 286. The action itself is barred only by laches as no statute of limitations covers a suit for enforcement of a patent. But courts apply the six–year limitation period for recovery of damages by analogy to determine if the patentee has been guilty of laches. A plaintiff's claim is barred by laches if he has delayed enforcing his rights for an unreasonable length of time and the defendant has been materially prejudiced by the delay.[1] In this Circuit, if a patentee files an infringement action more than six years after the alleged infringement, the alleged infringer has been presumptively prejudiced by the delay and the delay is presumptively unreasonable. To overcome this presumption of laches, the patentee must show the delay was reasonable or show the infringer engaged in particularly egregious activities. *See TWM, supra*, 592 F.2d at 348–49.[2] Laches alone, however, does not bar injunctive relief or damages for infringement occurring after the law-

1. *See Studiengesellschaft Kohle [SGK] v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *Maloney ·Crawford Tank Corp. v. Rocky Mountain Natural Gas Co., Inc.*, 494 F.2d 401, 403 (10th Cir. 1974); *American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1122 (6th Cir. 1973); *Jenn–Air Corp. v. Penn Ventilator Co.*, 464 F.2d 48, 49–50 (3d Cir. 1972); *Shaffer v. Rector Well Equipment Co.*, 155 F.2d 344, 345 (5th Cir. 1946); *Rome Grader & Machinery Corp. v. J. D. Adams Mfg.*, 135 F.2d 617, 619 (7th Cir. 1943); *France Mfg. Co. v. Jefferson Electric Co.*, 106 F.2d 605, 609 10 (6th Cir. 1939), *cert. denied*, 309 U.S. 657, 60

S.Ct. 471, 84 L.Ed. 1006 (1940); *Westco- Chippewa Pump Co. v. Delaware Electric & Supply Co.*, 64 F.2d 185 (3d Cir. 1933); *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828, 831 (N.D. Ill.1974), *aff'd*, 513 F.2d 1130 (7th Cir. 1975) (per curiam).

2. In addition, see *Jensen v. Western Irrigation & Mfg., Inc.*, No. 78–1550, (9th Cir., July 3, 1980); *SGK v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980); *American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1123-24 (6th Cir. 1973) (plaintiff had not met its burden); *Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1378 (7th Cir. 1972); *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1009 (7th Cir. 1970), *cert.*

suit was filed. To bar prospective relief, the defendant must show the plaintiff is estopped from asserting his claim. To establish estoppel, the defendant, in addition to showing laches, must show he was misled by the plaintiff. Equitable estoppel in a patent case requires representations or conduct by the patentee from which the alleged infringer could reasonably infer the patentee abandoned his patent claim or by which the alleged infringer is induced to believing his business would be unmolested.[3] For silence to work an estoppel, it must be sufficiently misleading to amount to an estoppel. Thus, to bar prospective relief, the defendant must show the plaintiff's misrepresentations, affirmative acts of misconduct, or intentionally misleading silence. See TWM, supra, 592 F.2d at 350.[4]

■ The present case discloses no evidence or disputed issues of fact of plaintiff's misrepresentations, misconduct, or intentionally misleading silence. At most, the record shows silence by a party who claims not to have known where defendant was or whether or not defendant was infringing. Thus, this Court must reverse the summary judgment for defendant against plaintiff's claims for injunction and for damages suffered after this action was filed. See TWM, supra.[5]

## III. Laches and Plaintiff's Claim for Damages

There remains the question whether or not summary judgment was proper on plaintiff's claim for damages for alleged infringement occurring before the lawsuit was filed. This question involves three sub-issues:

1) When does the six-year period start running?

2) Is the six-year period tolled by filing another lawsuit?

3) Whether or not the six-year period has been tolled, has plaintiff rebutted the presumption of laches or shown a material issue of fact is in dispute?

### A. Running of the Six-Year Period

This Court held in TWM that the six-year period began running from the date

---

denied, 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); General Electric Co. v. Sciaky Bros., Inc., 304 F.2d 724, 727 (6th Cir. 1962); Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 135 F.2d 617, 619 (7th Cir. 1943); Gillons v. Shell Co. of California, 86 F.2d 600, 607-08 (9th Cir. 1936); Technitrol, Inc. v. Memorex Corp., 376 F.Supp. 828, 831 (N.D.Ill. 1974), aff'd, 513 F.2d 1130 (7th Cir. 1975) (per curiam). If suit is brought within six years, the defendant has the burden of proving laches. See SGK v. Eastman Kodak Co., 616 F.2d 1315, 1326 (5th Cir. 1980); Maloney–Crawford Tank Corp. v. Rocky Mountain Natural Gas Co., Inc., 494 F.2d 401, 404 (10th Cir. 1974); Craftint Mfg. Co. v. Baker, 94 F.2d 369, 374 (9th Cir. 1938). One case apparently would always put the burden of proving laches on the defendant. See Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc., 532 F.2d 330, 334 (3d Cir. 1976) (defendant met its burden).

**3.** For example, see General Electric Co. v. Sciaky Bros., Inc., 304 F.2d 724, 726 (6th Cir. 1962) (General Electric was barred from patent claims because it had earlier written the infringer stating that it had no present intention of asserting the claims under the patent).

**4.** In addition, see Jensen v. Western Irrigation & Mfg., Inc., ――― F.2d ――――, No. 78–1550, (9th Cir., July 3, 1980); SGK v. Eastman Kodak Co.,

616 F.2d 1315, 1325 (5th Cir. 1980); Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479 (7th Cir.), cert. denied, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); Montgomery Ward & Co. v. Clair, 123 F.2d 878, 883 (8th Cir. 1941).

**5.** Some cases have found silence to be an estoppel where the patentee threatened immediate enforcement but then did nothing for an unreasonably long time. See Jensen v. Western Irrigation & Mfg., Inc., No. 78--1550, slip op. (9th Cir., July 3, 1980); Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 482 (7th Cir.), cert. denied, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); Continental Coatings Corp. v. Metco, Inc., 464 F.2d 1375, 1380 (7th Cir. 1972). In the present case, plaintiff, in his December 30, 1969 letter to defendant, threatened to enforce his patent, but did not threaten immediate enforcement. We think the record in this case shows mere silence, not intentionally misleading silence. We need not presently decide whether plaintiff is estopped by his silence where he threatened suit within a certain time limit or where he failed to respond to defendant's request for particulars. See Advanced Hydraulics, supra.

the Notice of Infringement was sent to the alleged infringer. *See TWM, supra,* 592 F.2d at 349. In that case, the patent was issued prior to the Notice of Infringement being sent to the defendant. In the present case, the District Court concluded that the December 30, 1969 letter, although it was mailed prior to the issuance of the patent, was a Notice of Infringement and held the six–year period started running from that date.

Plaintiff attacks the characterization of the letter as a Notice of Infringement. He does not dispute the contents of the letter, but only disputes whether or not the letter can legally serve as a Notice of Infringement as it was sent before the patent was issued.

This Court need not decide whether or not the December 30, 1969 letter constitutes statutory notice required under 35 U.S.C. § 287. The issue before the Court is, regardless of whether or not the letter serves as a Notice of Infringement, should it serve to start running the six–year period for the presumption of laches.

Decisions in this Court and elsewhere have generally charged the patentee with delay from the time when the patentee had knowledge of the defendant's allegedly infringing activities or had access to facts by which he reasonably should have known of the defendant's activities.[6] The December 30, 1969 letter indicates that plaintiff had knowledge of defendant's allegedly infringing activities. Plaintiff claims not to have known about any further allegedly infringing activities after February 1970, but admits that as of the issue date of the patent he knew about the intended use at the

National Farm Machinery Show in February 1970. Plaintiff cannot claim lack of knowledge after December 30, 1969. *See Gillons v. Shell Co. of California,* 86 F.2d 600, 605 (9th Cir. 1936), *cert. denied,* 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937) (after sending notice of infringement, patent owners will not be heard to say that they did not know of alleged infringement).

■ This Court has not found a case which charged the patentee with delay occurring prior to the issuance of the patent. *Cf. Tripp v. United States,* 406 F.2d 1066, 1071 (Ct.Cl.1969) (oral notice of infringement was given prior to issuance of patent, but patentee had no right to sue until patent was issued); *Mills Novelty Co. v. Monarch Tool & Mfg. Co.,* 49 F.2d 28, 29 (6th Cir.), *cert. denied,* 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561 (1931) (no obligation to give notice of infringement before patent issued even if patentee had knowledge of allegedly infringing activities). The Supreme Court has held that a patent owner has no rights under the patent until the patent issues. *See Marsh v. Nichols, Shepard & Co.,* 128 U.S. 605, 612, 9 S.Ct. 168, 170, 32 L.Ed. 538 (1888); *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 493, 13 L.Ed. 504 (1850); *Tripp, supra.* If the patentee has no right to sue until he has the patent, then waiting until the patent issues, even with full knowledge of an alleged infringer's activities, cannot be an unreasonable delay. Therefore, this Court holds that the six–year period cannot start running before the issue date of the patent.

■ Plaintiff would have this Court go further and hold that in this case the six–year period did not start running until the earliest contract date established in the rec-

---

**6.** *See Jensen v. Western Irrigation & Mfg., Inc.,* No. 78–1550, (9th Cir., July 3, 1980); *SGK v. Eastman Kodak Co.,* 616 F.2d 1315, 1326 (5th Cir. 1980); *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.,* 532 F.2d 330, 334 (3d Cir. 1976); *Moore v. Schultz,* 491 F.2d 294, 300 ·01 (10th Cir.), *cert. denied,* 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974); *General Electric Co. v. Sciaky Bros., Inc.,* 304 F.2d 724, 727 (6th Cir. 1962); *Whitman v. Walt Disney Productions, Inc.,* 263 F.2d 229, 231 (9th Cir. 1958); *Shaffer v. Rector Well Equipment Co.,* 155 F.2d 344, 345 (5th Cir. 1946); *Gillons*

*v. Shell Co. of California,* 86 F.2d 600 (9th Cir. 1936), *cert. denied,* 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937); *Holman v. Oil Well Supply Co.,* 83 F.2d 538, 539 (3d Cir. 1936); *Hamilton–Beach Mfg. Co. v. P. A. Geier Co.,* 74 F.2d 992, 995 (7th Cir. 1934) (facts failed to show patentee had actual knowledge); *Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co.,* 64 F.2d 185, 186 (3d Cir. 1933); *Bishop & Babcock Mfg. Co. v. Sears, Roebuck & Co.,* 125 F.Supp. 528, 529 (N.D.Ohio 1954), *aff'd* 232 F.2d 116 (6th Cir. 1956) (per curiam).

ord after the patent was issued, which is August 11, 1974. Plaintiff argues that it could not sue for infringement until there had been an actual or threatened use of the allegedly infringing sled. *See Observa–Dome Laboratories, Inc. v. McGraw–Hill, Inc.*, 343 F.Supp. 1030, 1032 (E.D.Pa.1972). *But see Cohen v. United States*, 487 F.2d 525, 527 (Ct.Cl.1973) (per curiam) (article available for use after issuance of the patent constituted an infringing use). Plaintiff overlooks the threatened use of the Grimm machine in February 1970, of which he admittedly had actual knowledge by the time the patent was issued. Since plaintiff had actual knowledge of defendant's allegedly infringing activities by the time the patent was issued, the six–year period started running on the date the patent was issued, January 27, 1970. Since the suit was filed December 8, 1977, the six–year period has expired and there is a presumption of unreasonable delay and of injury to defendant.

**7.** *See Moore v. Shultz*, 491 F.2d 294, 301 (10th Cir.), *cert. denied*, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974); *Maxon Premix Burner Co., Inc. v. Eclipse Fuel Engineering Co.*, 471 F.2d 308, 313 (7th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 591 (1973); *Jenn ·Air Corp. v. Penn Ventilator Co.*, 464 F.2d 48, 50 (3d Cir. 1972); *Armstrong v. Motorola, Inc.*, 374 F.2d 764, 769 (7th Cir. 1967) (estoppel defense rather than laches); *Langdon v. Saltser & Weinsier, Inc.*, 288 F.2d 50, 53 (2d Cir. 1961) (war plus period of other litigation was excusable delay); *Clair v. Kastar, Inc.*, 148 F.2d 644, 646 (2d Cir.), *cert. denied*, 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 459 (1945); *Montgomery Ward & Co. v. Clair*, 123 F.2d 878, 883 (8th Cir. 1941); *France Mfg. Co. v. Jefferson Electric Co.*, 106 F.2d 605, 610 (6th Cir. 1939), *cert. denied*, 309 U.S. 657, 60 S.Ct. 471, 84 L.Ed. 1006 (1940); *Mills Novelty Co. v. Monarch Tool & Mfg. Co.*, 49 F.2d 28, 29–30 (6th Cir.), *cert. denied*, 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561 (1931); *Alliance Securities Co. v. De Vilbiss Mfg. Co.*, 41 F.2d 668, 670 (6th Cir. 1930) (suit against defendant in Toledo was not unreasonably delayed when defendant assumed defense in patentee's prior suit in California); *United States Mitis Co. v. Detroit Steel & Spring Co.*, 122 F. 863, 866 (6th Cir. 1903); *Wayne–Gossard Corp. v. Sondra, Inc.*, 434 F.Supp. 1340, 1361 ·62 (E.D.Pa.1977), *aff'd*, 579 F.2d 41 (3d Cir. 1978) (per curiam) (other litigation does not automatically excuse delay; on facts of this case, delay was excused).

## B. Tolling of the Period by Plaintiff's Other Litigation

Plaintiff argues the burden of proof should not shift to him as he was involved in other litigation concerning the same patent in question here. He argues the six–year period should be tolled while the patentee is involved in other litigation.

Courts have generally held that a patentee need not sue more than one infringer at a given time. Any delay due to involvement in other litigation is considered excusable and hence not chargeable to the patentee as unreasonable delay.[7] However, this Court and others have refused to toll the six–year period where the patentee fails to notify the other alleged infringers of his pending lawsuit and his intent to enforce the patent against other infringers upon its completion.[8] The present case presents circumstances not heretofore considered. The prior cases involved either no notice of the other litigation[9] or notice of the other liti-

**8.** *See Jensen v. Western Irrigation & Mfg., Inc.*, No. 78–1550, (9th Cir., July 3, 1980); *SGK v. Eastman Kodak Co.*, 616 F.2d 1315, 1328 (5th Cir. 1980); *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.*, 532 F.2d 330, 334 (3d Cir. 1976) (court did not hold that patentee must always give notice; no abuse of discretion in finding laches in this case); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 480 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1123 (6th Cir. 1973); *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1014–15 (7th Cir. 1970), *cert. denied*, 410 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828, 833 (N.D.Ill.1974), *aff'd*, 513 F.2d 1130 (7th Cir. 1975) (per curiam).

**9.** *See Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.*, 532 F.2d 330 (3d Cir. 1976); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 480 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1124 (6th Cir. 1973); *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008 (7th Cir. 1970), *cert. denied*, 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828 (N.D.Ill.1974), *aff'd*, 513 F.2d 1130 (7th Cir. 1975).

gation being given within a reasonable time.[10] In the present case, notice of other litigation was not given until after six years had passed—a time period which this Court considers is presumptively unreasonable, although the other litigation was filed within the six–year period. This Court must decide whether the other litigation tolls the six–year period so long as notice is given while the litigation is pending or whether the *notice* of other litigation tolls the six–year period.

██ We apply the presumption of injury after a delay of six years because after six years an alleged infringer could reasonably believe the patentee did not intend to enforce his rights and, thus, could reasonably expend money and effort to expand his use of the infringed product or method. If the patentee does act to enforce his patent and the alleged infringer is informed of it, he cannot reasonably expect his business will remain unmolested. However, if the alleged infringer does not know about the patentee's actions to enforce the patent, the belief that he will be left alone is still reasonable. The alleged infringer cannot know the patentee's intentions unless the patentee tells him. Notice of the other litigation informs the alleged infringer that the patentee does not intend to leave him alone and allows the alleged infringer to sue for declaratory judgment should he choose not to wait until the patentee is ready to bring suit. *See American Home Products Corp. v. Lockwood Mfg. Co.,* 483 F.2d 1120, 1123 (6th Cir. 1973). This Court holds that, to avoid the presumption of injury to the alleged infringer after a delay of six years in enforcing a patent against the alleged infringer, the patentee must give the alleged infringer, within six years of learning about the infringement, notice of other pending litigation which delays enforcement of the patent against the alleged infringer and of an intent to sue when the other litigation is concluded. Since that was not done in the present case, the defendant has been presumptively injured by the six–year delay.

### C. Laches as a Question of Fact

██ However, that the defendant has been presumptively injured does not, itself, decide this case. Laches is an equitable doctrine which depends on consideration of all the facts in the case.[11] A finding of laches based on all the circumstances in the case is a matter within the trial court's discretion and will not be set aside unless an abuse of discretion has been shown.[12]

10. *See SGK v. Eastman Kodak Co.,* 616 F.2d 1315, 1330 (5th Cir. 1980) (within three years); *Montgomery Ward & Co. v. Clair,* 123 F.2d 878 (8th Cir. 1941) (notice was given, court did not say when). Other cases did not mention whether or not notice of other litigation was given to the alleged infringer. *See Moore v. Shultz,* 491 F.2d 294 (10th Cir.), *cert. denied,* 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974); *Clair v. Kastar, Inc.,* 148 F.2d 644 (2d Cir.), *cert. denied,* 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed.2d 459 (1945); *France Mfg. Co. v. Jefferson Electric Co.,* 106 F.2d 605 (6th Cir. 1939), *cert. denied,* 309 U.S. 657, 60 S.Ct. 471, 84 L.Ed. 1006 (1940).

11. *See SGK v. Eastman Kodak Co.,* 616 F.2d 1315, 1325 (5th Cir. 1980); *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.,* 532 F.2d 330, 334 (3d Cir. 1976); *Maloney–Crawford Tank Corp. v. Rocky Mountain Natural Gas Co., Inc.,* 494 F.2d 401, 403 (10th Cir. 1974); *American Home Products Corp. v. Lockwood Mfg. Co.,* 483 F.2d 1120, 1123 (6th Cir. 1973); *Jenn Air Corp. v. Penn Ventilator Co.,* 464 F.2d

48, 50 (3d Cir. 1972); *General Electric Co. v. Sciaky Bros., Inc.,* 304 F.2d 724, 727 (6th Cir. 1962); *Wayne Gossard Corp. v. Sondra, Inc.,* 434 F.Supp. 1340, 1361 (E.D.Pa.1977), *aff'd,* 579 F.2d 41 (3d Cir. 1978) (per curiam).

12. *See SGK v. Eastman Kodak Co.,* 616 F.2d 1315, 1325 (5th Cir. 1980); *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.,* 532 F.2d 330, 334 (3d Cir. 1976); *American Home Products Corp. v. Lockwood Mfg. Co.,* 483 F.2d 1120, 1124 (6th Cir. 1973); *Baker Mfg. Co. v. Whitewater Mfg. Co.,* 430 F.2d 1008, 1009 (7th Cir. 1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); *General Electric Co. v. Sciaky Bros., Inc.,* 304 F.2d 724, 727 (6th Cir. 1962); *Whitman v. Walt Disney Productions, Inc.,* 263 F.2d 229, 232 (9th Cir. 1958); *Craftint Mfg. Co. v. Baker,* 94 F.2d 369, 374 (9th Cir. 1938); *Gillons v. Shell Co. of California,* 86 F.2d 600, 604 (9th Cir. 1936), *cert. denied,* 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937).

However, in the instant case, the District Court was not in a position to decide the question of laches. There were circumstances in dispute—notably, whether or not the delay was reasonable given the difficulty in locating defendant and whether or not Heartbreaker II is sufficiently different to be a separate infringing act from Heartbreaker I. The presumption of injury merely shifted the burden of proof to the plaintiff to prove defendant was not injured by the delay or that the delay was reasonable rather than on the defendant to prove plaintiff was guilty of laches. Plaintiff must be given the opportunity to present evidence rebutting the presumption. Where, as here, the record before the Court on a motion for summary judgment shows factual issues in dispute which could affect the equity of the application of laches to bar the claim, the Court must deny the motion and permit the parties to present proof. The judgment of the District Court is reversed and the action is remanded for further proceedings consistent with this opinion.[13]

---

**13.** Plaintiff also claims the District Court erred in denying his post-judgment motion without allowing him to file a brief. Plaintiff's post judgment motion was allegedly brought under Rules 59, 60, 62, Fed.R.Civ.Pro., to set aside the judgment and findings of fact and conclusions of law made by the District Court. The only possible rule to support such a motion is Rule 60(b)(6), which provides for relief from judgment based on "any other reason justifying relief from the operation of the judgment." But Rule 60(b)(6) should not be used to grant relief if the same relief could reasonably be sought on appeal. Rule 60(b)(6) will not give relief from judgment for legal error, *see Martinez McBean v. Government of Virgin Islands*, 562 F.2d 908, 911 (3d Cir. 1977), which is all plaintiff claimed in its post-judgment motion. Thus, the denial of plaintiff's post-judgment motion was proper.