**A.C. AUKERMAN CO.,**
**Plaintiff-Appellant,**

v.

**MILLER FORMLESS CO., INC.,**
**Defendant-Appellee.**

**No. 81–3059.**

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1982.
Decided Nov. 24, 1982.

---

698

Duncan F. Beaman, Beaman & Beaman, Jackson, Mich., for plaintiff-appellant.

Theodore W. Anderson, Neuman, Williams, Anderson & Olson, Chicago, Ill., for defendant-appellee.

Before POSNER, DAVIS * and COFFEY, Circuit Judges.

DAVIS, Circuit Judge.

Plaintiff-appellant A.C. Aukerman Co., a patentee, has been held by the District Court to be barred by laches and estoppel from pursuing its patent infringement action against defendant-appellee, Miller Formless Co., Inc. This appeal tests the grant by the court below of defendant-appellee's motion for summary judgment against Aukerman on those grounds. The skeletal structure is that Aukerman holds two patents concerning a slip-form method of adjustable or asymmetrical highway median construction; one, issued February 12, 1974, covers plaintiff's method of slip-form construction and the other, dated March 26, 1977, covers the apparatus itself. It is undisputed that plaintiff learned of Miller Formless' alleged infringement in late 1972 (before the first patent issued), continued to be aware of it, and warned defendant of infringement litigation. This action against defendant Miller Formless was filed on July 30, 1980.[1]

### I

■ The defense of laches, as applied to patent infringement suits, means that if the patentee unduly delays bringing its claim to court then it is barred from recovering damages for infringements prior to the filing of the suit.[2] For laches to control the delay must be unreasonable, not excusable and materially prejudicial to the alleged infringer. *Studiengesellschaft Kohle v.*

*Eastman Kodak Co.,* 616 F.2d 1315, 1325–26 (5th Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *Rome Grader & Machinery Corp. v. J.D. Adams Manufacturing Co.,* 135 F.2d 617, 619 (7th Cir.1943); *Technitrol, Inc. v. Memorex Corp.,* 376 F.Supp. 828, 831 (N.D.Ill.1974), *aff'd sub nom., Technitrol, Inc. v. NCR Corp.,* 513 F.2d 1130 (7th Cir.1975). The obvious principle is that it is inequitable to permit the patentee to recover for infringements occurring during the time of its own unreasonable, unexcused, and harmful delay.

■ More specifically, a delay of over six years from the date of the first known alleged infringement, after the patent has issued, amounts to a *prima facie* showing of laches.[3] *Jensen v. Western Irrigation Manufacturing, Inc.,* 650 F.2d 165, 168–69 (9th Cir.1980); *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1009–10 (7th Cir.1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); *Technitrol,* 376 F.Supp. at 831. This presumption must be rebutted by the patentee with specific evidence excusing the delay or establishing a lack of prejudice to the accused infringer. *Studiengesellschaft Kohle,* 616 F.2d at 1326; *Continental Coatings Corp. v. Metco, Inc.,* 464 F.2d 1375, 1378 n. 9 (7th Cir.1972).

That settled presumption, with its shifting of the burden, applies to this case. The first Aukerman patent issued in February 1974, and this suit was not brought until July 1980. More than six years having elapsed, appellant must demonstrate that its long delay was either excused or not injurious to appellee.[4]

---

\* Oscar H. Davis, Circuit Judge, United States Court of Appeals for the Federal Circuit, is sitting by designation.

1. Further facts are set forth in the course of our discussion.

2. In contrast, the defense of estoppel, if established, precludes all relief for infringement, including that occurring after the suit is instituted. *See* Part II, *infra.*

3. This six year period is derived from the patent infringement statute, 35 U.S.C. § 271 *et seq.* (1976), which precludes recovery of damages for infringements that occurred over six years prior to the filing of the action. 35 U.S.C. § 286 (1976).

4. There are two Aukerman patents involved and appellant argues that, even if it is barred from relief on the earlier one, the six-year presumption of unreasonable delay and injury does not apply to the later patent issued in

Aukerman attempts to justify its prolonged delay because (1) it was involved for a time in another litigation with other companies on the same patents and also (2) it says it attempted to negotiate a license agreement with defendant and postponed going to court until those negotiations proved fruitless. The District Court rejected both those points, and so do we.

■ Patentees have no obligation to sue all alleged infringers at the same time, *Armstrong v. Motorola, Inc.,* 374 F.2d 764, 769 (7th Cir.), *cert. denied,* 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967), but concern with litigation against one asserted infringer does not automatically excuse the patentee from delays in bringing suit against others. *Studiengesellschaft Kohle,* 616 F.2d at 1327; *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 480 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). That excuse is acceptable only if other alleged infringers are given notice of the prior suit, *Advanced Hydraulics,* 525 F.2d at 480–81, and are informed of the patentee's intent to pursue litigation against them at the close of the earlier suit. *Studiengesellschaft Kohle,* 616 F.2d at 1327–28; *Baker Manufacturing Co.,* 430 F.2d at 1015; *Technitrol,* 376 F.Supp. at 833.

In this case Aukerman failed to give Miller Formless the required notice of the other suit. That the defendant may have been aware of the litigation does not absolve plaintiff of responsibility for the delay. The importance of a patentee's giving notice of other litigation, and of its intent to pursue other infringers, is to let the alleged infringer know that the patentee has not

acquiesced in the former's infringement. *See Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1163 (6th Cir. 1980). It would thus be reasonable for this defendant to infer that since another infringer was being sued, and defendant was not, and had not been advised that it would be sued, the appellant did not intend to sue it. *See Technitrol,* 376 F.Supp. at 833. This is especially true where (as here) plaintiff's license negotiations with appellee were carried on before and after the prior lawsuit.[5]

Appellant's second, and major, excuse for delay is that it was always attempting to resolve the dispute with defendant by continued license negotiations and that it sued (when it did) only because of threats from another licensee that the latter would withhold royalty payments unless Miller Formless was put under license or prohibited from manufacturing the barrier-making mechanism.

■ The general rule is that license negotiations do not necessarily push back the running of time in a laches defense. *General Electric Co. v. Sciaky Brothers,* 304 F.2d 724, 727 (6th Cir.1962). For such tolling the negotiations must ordinarily be continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays. *Continental Coatings Corp. v. Metco, Inc.,* 464 F.2d 1375, 1377–78 (7th Cir.1972); *Technitrol,* 376 F.Supp. at 832.

■ Here, on the other hand, the license negotiations were sporadic with periods of one to over one-and-a-half years during which there appear to have been no negoti-

---

March 1977. Appellant cannot escape so easily because this suit essentially concerns the first patent which covers the method of plaintiff's invention. The apparatus, the subject of the second invention, follows from that method. The patent application was split as a matter of patent office procedure and the bifurcated issuance has no bearing on the reasonableness of Aukerman's delay in bringing suit. In the license negotiations between the parties, *see infra,* plaintiff viewed the invention as both apparatus and method, and defendant's alleged infringement as a single intrusion.

5. Appellant argues that it had reasons other than the abandonment of its claim for bringing suit against the other alleged infringer and for not suing defendant at that time. This may be true but it is irrelevant. Aukerman offers no proof that defendant was, or should have been, aware of those particular reasons. Without such awareness of the special reasons why defendant was not being sued, knowledge of the existence of the other litigation does not toll the time delay in defendant's case. *See Saverslak v. Davis-Cleaver Produce Co.,* 606 F.2d 208, 213 (7th Cir.1979).

ations at all. These exchanges were all unfruitful in the sense that defendant never undertook, even preliminarily, to obtain a license, exclusive or non-exclusive—nor did defendant ever respond that there was an affirmative probability of its taking a license. Moreover, in the long exchange of correspondence, defendant never abandoned its position—sometimes expressed very strongly and precisely, sometimes more softly—that plaintiff's patents were, or might well be, invalid and unenforceable (either because anticipated or previously used) and that defendant was not infringing upon them.[6] True, defendant did several times say that it would seriously consider plaintiff's offers of a license, but we are satisfied from the vast amount of correspondence between the parties both that the defendant was quite aware that the costs and trouble of defending a patent suit could vitiate a successful defense, and that an inexpensive license could outweigh the burdens of that successful but costly defense. Refusal to break off communication was a prophylactic move in the hope that plaintiff might accede to a cheap license. Conversely, we are certain that, objectively, plaintiff could not be misled by Miller Formless' communications to believe that Aukerman would, or had a good chance to, obtain from defendant the kind of license arrangements and payments plaintiff truly desired. See Continental Coatings Corp. v. Metco, Inc., 464 F.2d at 1378 n. 9. It may be that the "jousting" (the District Court's word) between the parties was "tactical" on both sides, but that does not excuse plaintiff. With a delay of this length, there has to be something significantly more than continued jousting, at least where there is no real possibility of success on the part of the patentee in obtaining the solid type of license it wants.

As to the problem of prejudice to the defendant through the long delay, there is no substantial question. Miller Formless' business continued and expanded while plaintiff was postponing suit. The record also shows that defendant's customers were upset about the possibility of their being liable for infringement of plaintiff's patents, and defendant had to mollify them (possibly including promises of indemnity). The long time-lag obviously meant, too, potential loss of memory and documentation bearing on the validity of the patents. All this was prejudice enough. See Continental Coatings Corp. v. Metco, Inc., 464 F.2d 1375, 1377, 1378 (7th Cir.1972).

## II

■ The District Court likewise upheld the defense of estoppel, thus barring plaintiff from prospective relief via an injunction or damages for post-suit infringement. Estoppel includes the two elements of laches (Part I, supra)—(1) an unreasonable and unexcused delay plus (2) prejudice to the defendant—and adds (3) affirmative conduct by the patentee inducing the belief that it had abandoned its claims against the alleged infringer; and (4) detrimental reliance by the infringer. Advanced Hydraulics, 525 F.2d at 479; Continental Coatings, 464 F.2d at 1379–80; Lebold v. Inland Steel Co., 125 F.2d 369, 375 (7th Cir.1941); Siemens Aktiengesellschaft v. Beltone Electronics Corp., 407 F.Supp. 807, 810 (N.D.Ill. 1975). Having decided supra that the first two elements are present in this case, we now limit our discussion to the latter two.

■ Mere lapse of time, without more, is not sufficient to found a defense of estoppel, Siemens Aktiengesellschaft, 407 F.Supp. at 810, but notice from a patentee to the defendant that infringement has occurred, accompanied by a threat of enforcement, and followed by an extended period of nonenforcement, is affirmative conduct from which an alleged infringer could reasonably infer that the claim against it had been abandoned. Jensen v. Western Irrigation Manufacturing, Inc., 650 F.2d 165, 169 (9th Cir.1980); Continental Coatings, 464 F.2d at 1379–1380.

---

**6.** In November 1975, plaintiff visited defendant's plant to view an apparatus which in the latter's view antedated and invalidated plaintiff's patents.

■ Aukerman threatened an infringement action as early as October 1973, and repeated that warning thereafter, but this suit was not brought until 1980. Part I, *supra,* shows that this long delay was unreasonable, unexcused, and prejudicial. Such a delay, coupled with the repeated but unimplemented threats of enforcement, warranted Miller Formless in concluding that plaintiff did not intend to bring suit, and therefore that Miller could go forward on that assumption. As this court recited in *Continental Coatings Corp.,* such conduct of the patentee "encouraged the belief that the infringer's business would be unmolested" and "justif[ied] an inference of abandonment." 464 F.2d at 1380. Having made a threat of enforcement, long left unfulfilled, "the patentee was thereafter estopped to deny that it was then [at the time of the threat] ready, willing and able to establish the validity of the patent in court if necessary." *Id.* That test can be based on the objective facts, and need not delve into the defendant's subjective beliefs. *See Continental Coatings Corp. v. Metco, Inc.,* 464 F.2d at 1378, esp. n. 9.

Nevertheless, the argument is made that defendant continued to manufacture, not because it relied on plaintiff's prolonged failure to sue despite the threats, but because of Miller Formless' belief that plaintiff's patents were invalid or that defendant was not infringing. *See Armstrong v. Motorola, Inc.,* 374 F.2d 764, 770 (7th Cir.), *cert. denied,* 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967). The record contains little or nothing to show that this was the only or the dominant reason for defendant's position. To the contrary, the objective circumstances (including the exchange of letters between the parties) suggest otherwise, as *Continental Coatings* recognized (464 F.2d at 1378 n. 9).[7] Miller Formless could properly infer that Aukerman would never sue.

Aukerman's answer is that it asked the district court to compel production of certain of defendant's internal documents (withheld by Miller Formless under claims of attorney-client and work-product privilege) for the very purpose of discovering the facts needed to show that defendant essentially relied, not on plaintiff's delay or "abandonment," but on the defendant's belief that the patents were invalid or not infringed. The absence of such discovery is irrelevant to this case because the District Court acted within its discretion in denying plaintiff's belated motion which came nine months after defendant asserted its claims of privilege and four months after defendant's motion for summary judgment had been filed and after briefs had been submitted on that motion. *See Butler v. Pettigrew,* 409 F.2d 1205, 1207 (7th Cir.1969). There had been no waiver of privilege by defendant which has relied throughout the case neither on (otherwise) privileged materials nor on any attorney's internal advice that plaintiff's patents were invalid or noninfringed. This case can and should be decided on the existing record which excludes defendant's internal thinking, even if we assume that in some other litigation the internal position of the accused infringer might be relevant and discoverable.

Finally, we recognize that this court has expressed some reluctance to resolve patent disputes on motion for summary judgment, *Advanced Hydraulics,* 525 F.2d at 479; *Continental Coatings Corp.,* 464 F.2d at 1378–79. But like *Continental* (which also affirmed a summary judgment sustaining laches and estoppel) this case presents no triable dispute over a material fact and we are satisfied that the district court correctly appraised the undisputed facts as requiring the two defenses to be upheld.

*Affirmed.*

**7.** The court there said: "When a patentee makes a threat of 'vigorous enforcement' which is met with unequivocal resistance by the alleged infringer and follows this with mere sporadic offers of a license over a seven year period, the alleged infringer could, not unreasonably, conclude that the patentee had acquiesced in the alleged infringer's assessment of invalidity and was merely making half-hearted offers of a license in the hope that it might make a little money without much expense."